UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AMANDA C., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:19-cv-00539-JAW |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the November 27, 2018 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease, obesity, depressive disorder, and anxiety disorder. (R. 30.) The ALJ further found that as the result of the impairments, Plaintiff has a residual functional capacity (RFC) to perform light work, limited to performing simple tasks, except that Plaintiff must be permitted to use a cane to ambulate and to change position three to five minutes hourly, and while Plaintiff can frequently climb ramps or stairs and occasionally stoop, kneel and crouch, she can never crawl, or climb ladders, ropes or scaffolds, nor can she tolerate exposure to unprotected heights. (R. 33.)

Plaintiff has no past relevant work. Considering Plaintiff's age, education, work experience, and RFC, and relying in part on the testimony of a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the jobs of ticket seller, parking lot attendant and cashier. (R. 39-40.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's multilevel spine impairments and obesity at Step 3 of his analysis and in his formulation of Plaintiff's physical and mental RFC. Plaintiff also argues that the vocational expert's testimony does not support the ALJ's Step 5 conclusions.

### A.  Step 3

At Step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. § 416.920(a)(iii). If so, the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id.*, § 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. § 416.925(a) (same). At Step 3, the claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but does not meet one or more of the criteria of the listing,

the claimant may still be found disabled at Step 3 if the claimant has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii) (defining "medical equivalence").

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, specifically Listing 1.04 disorders of the spine. To meet Listing 1.04, a claimant must show that he or she has a disorder of the spine with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively[.]

In making his determination, the ALJ noted that Plaintiff's MRI showed no appreciable stenosis of her lumbar spine and essentially normal L1-2 and L2-3 disc spaces, that Plaintiff's gait is within normal limits, that she ambulates effectively, and that her extremities show full strength and range of motion. (R. 31-32.) In further support of his determination, the ALJ cited Plaintiff's bilaterally negative straight leg tests, self-reports

of being able to bathe, dress, cook, clean, shop, go for walks, and do yoga, and the lack of any evidence of spinal arachnoiditis.  (R. 32.)  Two state agency medical consultants, Archibald Green, D.O., and J. H. Hall, M.D., whose assessments the ALJ found persuasive (R. 37), opined that Plaintiff's impairments did not meet or medically equal the listing of impairments.  (R. 116, 129.)

The ALJ's discussion of Listing 1.04 was adequate to support his finding.  Plaintiff cannot establish on this record that she meets all the requirements of a listing.  The ALJ was entitled to rely upon the opinions of the state agency medical consultants in reaching this conclusion where, as here, substantial evidence supports the experts' assessments.  *Carlin v. Berryhill*, 2:17-cv-00175-DBH, 2018 WL 2079504, at *3-4 (D. Me. May 4, 2018).[2]  Plaintiff argues, however, that she could potentially equal a listing when her extreme obesity is considered, which Plaintiff argues the ALJ failed to properly assess.

The ALJ found that Plaintiff's obesity does not equal a listing on its own or in combination with at least one of Plaintiff's medically determinable impairments.  (R. 32.)  The Social Security rulings require an evaluation of the limiting impact that obesity has on a claimant.  *See* SSR 02–1p, *Titles II and XVI: Evaluation of Obesity,* 2000 WL 628049 (Sept. 12, 2002).  Ruling SSR 02–1p recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and

---

[2] The ALJ would be entitled to rely on the consultants' opinions even if they had not specifically discussed a listing, because their evaluation of the RFC reflects that an expert determined that the evidence does not meet or medically equal a listing.  *Id.*; *Burnham v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *3 (D. Me. Mar. 2012) (rec. dec., *aff'd* Apr. 3, 2012).

musculoskeletal body systems." 2000 WL 628049, at *3.  The Ruling provides that obesity will be considered at Step 2, at Step 3, as part of the RFC evaluation, and in connection with the assessment of the ability to work at Step 4 and Step 5.  *Id.*  An adjudicator must assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  SSR 02–1p, 2000 WL 628049, at *6.  Consideration of obesity is not subject to heightened demands that require protracted discussion.  "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."  *Id.* at *7.

The ALJ identified obesity as a factor in Plaintiff's limitations and determined, with an adequate discussion, that she can engage in her daily activities "without much difficulty," that her physical examinations "show generally mild findings," and that the evidence does not demonstrate that Plaintiff's obesity is of listing-level severity  (R. 32.)  The ALJ's assessment was consistent with and supported by the experts whom the ALJ found were persuasive.  Both Drs. Green and Hall acknowledged Plaintiff's morbid obesity in their opinions and considered it as part of their RFC assessments.  (R. 118, 131.)  The ALJ permissibly relied on the consultants' medical findings in assessing obesity's impact on Plaintiff's degenerative disc disorder in making the determination that it did not equal a listing.  *Carlin*, 2018 WL 2079504, at *3-4; *Burnham*, 2012 WL 899544, at *3.  Neither the record nor the law requires more from the ALJ.[3]

---

[3] Plaintiff appears to suggest that she effectively was denied the ability to prove a listing was because the ALJ did not arrange for a medical expert to participate in the hearing.  (SOE at 8 n.7.)  An ALJ is not

## B. The ALJ's RFC Finding

Plaintiff argues that the ALJ erred when he failed to assess properly the medical evidence of her severe back impairments, new evidence, the impact of her obesity, and Plaintiff's mental RFC.

In his assessment of the extent of Plaintiff's back impairment, the ALJ found persuasive and relied upon the opinions of Dr. Hall and Dr. Green and largely adopted their physical RFC findings. (R. 37.) "[T]his court has frequently held that state-agency reviewers' opinions may be sufficient to support an assigned RFC." *Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629, at *3 (D. Me. July 15, 2014); *see also Powers v. Barnhart*, Civil No. 04-86-P-C, 2004 WL 2862170-, at *2 (D. Me. Dec. 13, 2004); *Larck v. Barnhart*, Civil No. 02-112-BWm 2003 WL 22466173, at *2 (D. Me. Oct. 31, 2003). Plaintiff contends, however, that the ALJ could not reasonably rely on their medical findings because they did not have the most probative evidence when they reviewed the record. (SOE at 11.)

In support of her argument, Plaintiff cites to the examinations performed by Nancy Ball, M.D., in 2012 (R. 500-506) and by David Urquia, M.D., in 2017 (R. 496-99). Significantly, Dr. Ball performed her examination of Plaintiff more than four years prior to the start of the time period adjudicated by the ALJ. (R. 500-506; 644-46.) Moreover, both Dr. Hall and Dr. Green reviewed the same MRI findings, dated October 18, 2012, that

---

required to call a medical expert to assess whether a listing is equaled. *DuBois v. Berryhill*, No. 1:17-cv-00076-JDL, 2017 WL 6000340, at *2 (D. Me. Dec. 3, 2017) (rec. dec., *aff'd* Feb. 28, 2018); *see also Carlin*, 2018 WL 2079504, at *4.

7

were reviewed by Dr. Ball and Dr. Urquia. (R. 114, 496-97, 644-46.) Plaintiff further fails to identify anything of consequence in the findings of either Dr. Ball or Dr. Urquia that contradicts or undermines the state agency experts' assessments. In short, the ALJ's reliance on the assessments of the state agency experts in formulating Plaintiff's RFC is supportable.[4]

As to Plaintiff's claim that the ALJ did not properly assess Plaintiff's obesity in formulating the RFC, as noted above, the state agency consultants included it as a factor when formulating Plaintiff's RFC findings. (R. 118, 131.) An ALJ may rely on such experts' medical findings in accounting for obesity's impact on Plaintiff's functional abilities. *Rucker v. Colvin*, No. 2:13-cv-00218, 2014 WL 1870731, at *3 (D. Me. May 8, 2014). Furthermore, the ALJ noted that, despite her obesity, Plaintiff can get dressed, cook meals, and complete household chores, as well as shop, attend medical appointments, and go on walks and to the beach. (R. 35.) In addition, the ALJ observed that physical examinations revealed that Plaintiff had full strength and range of motion, a normal gait

---

[4] Plaintiff also points to additional evidence submitted after the ALJ's decision. (SOE at 13-14.) To the extent Plaintiff argues that the Appeals Council erred in denying review based on this new evidence (*see* R. 2), the argument is unavailing. "The First Circuit has emphasized that the Appeals Council's reasons for denying review are owed 'great deference[,]' although 'they are ordinarily not beyond review in extreme cases.'" *Alley v. Astrue*, Civil No. 09-636-B-W, WL 4386516, at*3 (D. Me. Oct. 28, 2010) (quoting *Mills v. Apfel*, 244 F.3d 1, 6 (1st Cir. 2001). The standard for examining an Appeals Council denial of review is whether the Appeals Council's denial "rests on an explicit mistake of law or other egregious error." *Alley*, WL 4386516, at*3. The issue here, then, "is whether the Appeals Council was egregiously mistaken in its threshold determination that the new evidence did not present a reasonable probability of changing the ALJ's decision." *Wilson v. Colvin*, No. 2:13–cv–197–JDL, 2014 WL 4715406, at *1 (D. Me. Sept. 22, 2014). Plaintiff makes no argument that the Appeals Council was egregiously mistaken in finding that the newly submitted evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision, and "must accordingly be deemed to have waived any argument based on … the appropriate standard." *Oakes v. Colvin*, No. 1:15–cv–189–NT, 2015 WL 10436147, at *3 (D. Me. Dec. 28, 2015).

and effective ambulation. (*Id.*) The ALJ's discussion of the impact of obesity was adequate and was consistent with the conclusions of the agency experts. The ALJ was not required to provide any additional explanation or assessment.

Plaintiff argues that the ALJ's mental RCF finding is not based on expert opinion and is thus not supported by substantial evidence. (SOE at 14.) First, to the extent Plaintiff contends that the ALJ erred in rejecting the opinion of Sarah Briscoe, M.D., Plaintiff's argument is unconvincing. As the ALJ supportably noted, "many of the questions [on the treating source RFC statement] are unanswered or the responses are vague." (R. 38, citing Exhibit 15F.)

In addition, while the ALJ did not give controlling weight to or any "specific evidentiary weight" to a medical opinion (R. 37), the ALJ's conclusion is consistent with and supported by an expert opinion the ALJ found to be persuasive. Specifically, the ALJ found a psychological evaluation performed by Susanne Stiefel, Ph.D., to be persuasive.[5] In her report, Dr. Stiefel wrote, "[o]verall [Plaintiff's] symptoms are having a moderate impact on her social and occupational functioning." (R. 391.) The ALJ's determination that Plaintiff was limited to "simple tasks" (R. 33, 37) and has "moderate limitation in concentration, persistent, or maintaining pace" (R. 37) is more restrictive than the findings

---

[5] The ALJ found that the opinions of state agency psychological consultants, Susan Lichtman, Ph.D. and David Houston, Ph.D., that Plaintiff was no more than mildly limited in the "B criteria" of section 12.02 of the Social Security Bluebook to be unpersuasive. (R.37.)

of the agency consultants[6] and consistent with and supported by the findings of Dr. Stiefel.[7]

Finally, the ALJ's observations about and reliance on other portions of the record to support his RFC finding were supportable and within the ALJ's authority and ability to assess. The ALJ noted that Plaintiff's mental status examinations showed that her memory was intact; her concentration was within normal limits; and her insight and judgment were good. (R. 36.) She was also described as alert, cooperative and calm. (Id.) "While they are not opinions, reports of normal mental status upon examination … are not the type of raw medical data that a layperson is prohibited to evaluate." *Priest v. Colvin*, No. 15-cv-00379, 2016 WL 7335583, at *2 (D. Me. Dec. 16, 2016). The ALJ also cited Plaintiff's self-reports of engaging in a variety of activities, including reading, watching television, managing her finances, and maintaining a relationship with her boyfriend, as well as writing on the computer and playing Dungeons & Dragons with her friends to support his finding. (R. 37.)

In sum, contrary to Plaintiff's argument, the ALJ's mental RFC is supported by substantial evidence on the record.

---

[6] To the extent the ALJ's RFC gave Plaintiff the benefit of the doubt as to her report regarding her limitations and included restrictions more favorable to Plaintiff than some or all the experts based in part on Plaintiff's testimony, the ALJ's RFC finding was not error. *Kristina D.B. v. Berryhill*, No. 18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019).

[7] Plaintiff contends the ALJ failed to address adequately Dr. Stiefel's note that Plaintiff "would have more severe difficulty dealing with work stresses and maintaining attention and concentration on the job because of problems related to anxiety, depression, and coping with chronic pain. This could affect her ability to function independently." (SOE at 15.) In the sentence immediately preceding the quoted portion, Dr. Stiefel wrote, "[Plaintiff] could use adequate judgment on a job with which she is familiar." (R. 390.) A reasonable interpretation of Dr. Stiefel's statements in context is that Plaintiff would have more difficulty with attention and concentration than with judgment – such an observation is not inconsistent with her conclusion that Plaintiff's symptoms would have a moderate impact on her occupational functioning.

## C. Vocational Expert's Testimony

Plaintiff challenges the testimony of the vocational expert. Because the Plaintiff's challenge depends on the Court finding that the ALJ's Step 3 and RFC findings are erroneous, given the above analysis, Plaintiff's argument must fail.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of August, 2020.